UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HMONG 2 et al., fictitious names, on behalf of themselves and as representatives of members of a class of similarly situated claimants,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, CENTRAL INTELLIGENCE AGENCY,<br><br>Defendants. | No. 2:17-cv-00927-TLN-AC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

This matter is before the Court pursuant to Defendants United States of America ("United States") and Central Intelligence Agency's (collectively, "Defendants") Motion to Dismiss. (ECF No. 9.) Plaintiffs Hmong 2, Hmong 3, Hmong 4, and Hmong 5, fictitious names, (collectively, "Plaintiffs"), on behalf of themselves and as representatives of members of a class of similarly situated claimants, filed an opposition, (ECF No. 10), and Defendants filed a reply, (ECF No. 12). For the reasons set forth below, the Court hereby GRANTS Defendants' Motion to Dismiss without leave to amend. (ECF No. 9.)

///

///

///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 2017, Plaintiffs filed a putative class action complaint against Defendants alleging that they aided and abetted violations of foreign and international law against the Hmong people in Laos. (ECF No. 2.) Specifically, Plaintiffs contend that Defendants recruited the Hmong people to fight against communist forces in the Vietnam War, but then failed to protect them from atrocities carried out by the Laotian communist regime after the United States exited the Vietnam War. (ECF No. 2 ¶¶ 22, 31.) On behalf of themselves and similarly situated persons, Plaintiffs now seek various legal and equitable remedies pursuant to the Federal Tort Claims Act ("FTCA"). (ECF No. 2 ¶ 21.)

Plaintiffs allege that Defendants recruited, armed, funded, and trained Hmong soldiers as a "Secret Army" to fight against communist forces in Laos during the Vietnam War. (ECF No. 2 ¶¶ 1, 40–45, 56, 147.) Plaintiffs allege that the Hmong Secret Army opposed the Pathet Lao, a communist political faction in Laos. (ECF No. 2 ¶ 149.) Plaintiffs further allege that certain United States officials, including President Eisenhower and President Kennedy, provided verbal assurances that the United States would protect the Hmong people regardless of the outcome of these conflicts. (ECF No. 2 ¶¶ 25, 30, 35, 65.) However, Plaintiffs allege that in May 1975, the Pathet Lao came to power and began a campaign of atrocities against hundreds of thousands of Hmong veterans of the "Secret War" and their descendants, including rape, mutilation, torture, disembowelments, and poisoning. (ECF No. 2 ¶¶ 2–3, 6, 9, 13, 146, 148–54, 164–66.) Plaintiffs allege that the Laotian government committed these acts in retaliation of the Hmong people's military service for the United States in the Vietnam War. (ECF No. 2 ¶ 149.)

Plaintiffs allege that the atrocities committed by the Laotian government violate the Vientiane Ceasefire Agreement, as well as the 1962 Geneva Convention, the 1966 United Nations International Covenant on Civil and Political Rights, the 1948 Convention on the Prevention and Punishment of the Crime of Genocide, and Laotian criminal laws. (ECF No. 2 ¶¶ 16–18, 128–46.) Plaintiffs "seek[] to impose liability on the [United States] under the [FTCA] based on its conduct in aiding and abetting the war crimes committed by Laos against the Hmong people." (ECF No. 2 ¶ 92.) According to Plaintiffs, Defendants "purposefully availed themselves [of] the

benefit of working with Hmong soldiers in Laos, and then purposefully left those very soldiers to be murdered and killed by Laos officials, and to have their families suffer . . . atrocities in Laos." (ECF No. 2 ¶ 22.) Plaintiffs assert that the United States should have proposed "some kind of diplomatic solution" or "lobbied for UN Sanctions," but instead the United States "chose as a strategic goal to help the Hmong do nothing." (ECF No. 2 ¶ 58.)

Each Plaintiff alleges that he is "a direct victim of the atrocities committed against the Hmong people by Laos generally," was "directly and physically injured in Laos," and had family members who "were also killed by Laotian officials." (ECF No. 2 ¶¶ 108, 111, 114, 117.) Each Plaintiff uses a fictitious name to protect his true identity and protect himself from retaliation by Laotian officials. (ECF No. 2 ¶¶ 106, 109, 112, 115, 118.) Each Plaintiff seeks damages exceeding $5 million, attorneys' fees, and court costs. (ECF No. 2 at 43–44.) Plaintiffs also request "declaratory relief finding that the Defendants are liable under the [FTCA]," as well as "injunctive relief in the form of specific performance," whereby the United States would be compelled "to protect and safeguard the Hmong people from the Laotian government." (ECF No. 2 ¶¶ 170, 173; ECF No. 2 at 44.)

## II. STANDARD OF LAW

Federal Rule of Civil Procedure ("Rule") 12(b)(1) allows a party, or the Court on its own initiative, to challenge the court's subject matter jurisdiction at any stage in the litigation. Fed. R. Civ. P. 12(b)(1) & (h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). If the court determines at any time that it lacks subject matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III. ANALYSIS

Defendants move to dismiss Plaintiffs' complaint on two grounds. First, Defendants argue Plaintiffs' claims are barred under the political question doctrine. (ECF No. 9-1 at 8.) Second, Defendants argue Plaintiffs' claims are barred under the doctrine of sovereign immunity.

(ECF No. 9-1 at 14.) For the reasons discussed below, the Court finds that Plaintiffs' claims are barred under the political question doctrine. Therefore, the Court does not reach the issue of sovereign immunity.

"The nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962). "The political question doctrine serves to prevent the federal courts from intruding unduly on certain policy choices and value judgments that are constitutionally committed to Congress or the executive branch." *Koohi v. United States*, 976 F.2d 1328, 1331 (9th Cir. 1992). While the political question doctrine raises both jurisdictional and prudential concerns, "it is at bottom a jurisdictional limitation imposed on the courts by the Constitution, and not by the judiciary itself." *Corrie v. Caterpillar*, 503 F.3d 974, 981 (9th Cir. 2007). Therefore, courts lack subject matter jurisdiction over cases that present political questions. *Id.* at 982.

Not every case that "touches foreign relations lies beyond judicial cognizance." *Baker*, 369 U.S. at 211. To determine whether an issue is a political question that the court is barred from hearing, the court considers whether "a matter has in any measure been committed by the Constitution to another branch of government." *Baker*, 369 U.S. at 210. In *Baker*, the Supreme Court established six formulations to consider when determining whether a case presents a non-justiciable political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217. These six formulations, now commonly referred to as independent tests, "are more discrete in theory than in practice, with the analyses often collapsing into one another." *Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005). Further, to find a political question, the court need only conclude that one of the six tests is satisfied. *Republic of the Marsh. Islands*

4

*v. United States*, 865 F.3d 1187, 1200 (9th Cir. 2017).

Here, all six *Baker* tests favor dismissal. First, Plaintiffs challenge matters expressly committed to the executive and legislative branches by the Constitution—the conduct of foreign relations and military affairs in Laos during and following the Vietnam War. As the Supreme Court has long recognized, "[t]he conduct of the foreign relations of our Government is committed by the Constitution to the Executive and Legislative [branches] . . . , and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918). Further, "[w]hether to grant military or other aid to a foreign nation is a political decision inherently entangled with the conduct of foreign relations." *Corrie*, 503 F.3d at 983. Therefore, Plaintiffs seek resolution of an issue that is expressly committed to the political branches.

Turning to the second and third *Baker* tests, this case requires the Court to review and pass judgment on foreign policy and military strategy, which are policy determinations that lack discoverable and manageable judicial standards. "To determine whether drastic measures should be taken in matters of foreign policy and national security is not the stuff of adjudication, but of policymaking." *Schneider v. Kissinger*, 412 F.3d 190, 197 (D.C. Cir. 2005). "[J]udicial restraint in the area of foreign affairs is often appropriate because such cases 'frequently turn on standards that defy judicial application, or involve the exercise of a discretion demonstrably committed to the executive or legislature.'" *Harbury v. Hayden*, 522 F.3d 413, 419 (D.C. Cir. 2008) (quoting *Baker*, 369 U.S. at 211). Moreover, although Plaintiffs maintain this action under the FTCA, "recasting foreign policy . . . questions in tort terms does not provide standards for making or reviewing foreign policy judgments." *Schneider*, 412 F.3d at 197. Accordingly, there are no judicially discoverable and manageable standards to guide the resolution of Plaintiff's claims.

The fourth, fifth, and sixth *Baker* tests also favor dismissal as the conduct of the United States toward the Hmong people in Laos "is not only a decision committed to the political branches, but a decision those branches have already made." *Corrie*, 503 F.3d at 983. The political branches made policy decisions regarding the presence and extent of the United States' foreign military involvement in Laos decades ago, and the Court simply "could not find in favor

of the plaintiffs without implicitly questioning, and even condemning, United States foreign policy." *Id.* at 984; *see Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544, 555 (9th Cir. 2014) (dismissing an action where a judgment for the plaintiffs "would necessarily conflict with and denounce our government's official actions").

Plaintiffs do not address the *Baker* factors, but instead generally argue that their lawsuit centers around war crimes, and therefore cannot be subject to the political question doctrine. (ECF No. 10 at 11–12.) This argument lacks merit. The Ninth Circuit has clearly held "[w]e are not a war crimes tribunal." *Alperin*, 410 F.3d at 560. Acting as such would "intrud[e] unduly on certain policy choices and value judgments that are constitutionally committed to Congress or the executive branch." *Koohi*, 976 F.2d at 1331. Therefore, the political question doctrine bars Plaintiffs' claims. Moreover, the Court finds amendment would be futile because Plaintiffs have not articulated any additional facts or theories that would avoid the political question doctrine. Accordingly, the Court dismisses Plaintiffs' complaint without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss without leave to amend. (ECF No. 9.)

Dated: January 16, 2019

_____
Troy L. Nunley
United States District Judge